# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| TEREX SOUTH DAKOTA, INC., <br>     Plaintiff, <br> v. <br> CARRARO DRIVE TECH, S.P.A., <br>     Defendant. | No. 3:17-cv-00154 (MPS) |

## RULING ON MOTIONS TO DISMISS

This case arises out of a contract for the sale of goods between two commercial parties. The plaintiff, Terex South Dakota, Inc. ("Terex"), alleges that the defendant, Carraro Drive Tech, S.p.A. ("Carraro"), supplied it with faulty axles for the material handling equipment it sells and then refused to provide warranty coverage after the axles suffered catastrophic failures, leading to complaints by Terex's customers. Terex sets out seven counts against Carraro: (i) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) breach of express warranty; (iv) breach of implied warranty of fitness for a particular purpose; (v) breach of implied warranty of merchantability; (vi) express indemnity; and (vii) negligence. Carraro presents a different account, alleging that Terex knew or should have known that a mechanism over which it had control was to blame for the failure of Carraro's axles. As a result, Carraro brings the following counterclaims against Terex: (i) wrongful rejection (count one); (ii) breach of warranty by buyer (count two); (iii) fraudulent misrepresentation (count three); (iv) negligent misrepresentation (count four); (v) promissory estoppel (count five); (vi) unjust enrichment (count six); (vii) breach of the covenant of good faith and fair dealing (count seven); (viii) breach of contract (count eight); (ix) negligence (count nine); and (x) violation of the Connecticut Unfair Trade Practices Act ("CUTPA") (count ten). The parties now advance

1

dueling motions to dismiss. Carraro moves to dismiss Terex's complaint. (ECF No. 16). Terex moves to dismiss counts three, four, nine, and ten of Carraro's counterclaim complaint. For the following reasons, Carraro's motion to dismiss is denied and Terex's motion to dismiss is granted. Further, Carraro's second and eighth counts are dismissed for failure to state a cognizable claim.

## I. Factual Allegations

### a. Terex's Complaint

Terex "designs and manufactures material handling equipment including . . . the GTH-844, a large wheeled telehandler. . . ." (ECF No. 1 at ¶ 6). Carraro "designs and manufactures axles of medium and large size. . . ." (*Id.* at ¶ 7). "In early 2010, [Terex] and Carraro signed a 'Letter of Intent to Make an Award' for axles to be used on [Terex's GTH-844] telehandlers." (*Id.* at ¶ 8). Terex then filled out a form provided by Carraro identifying the technical specifications for the GTH-844. (*Id.* at ¶ 9). Carraro was to use this information to "select[] the appropriate model of stock axle meeting the identified needs of [Terex], and [Terex] relied on Carraro's skill and judgment in that regard." (*Id.*).

When Terex purchased axles from Carraro, it would simultaneously issue a "Blanket Release" containing Terex's "Terms and Conditions which provide, among other things, the warranty applicable to Carraro's [a]xles, indemnification, choice of Connecticut law and an award of costs, including a reasonable attorney's fee, in any litigation arising out of the contract." (*Id.* at ¶ 11). "Shortly after Carraro's [a]xles were installed in the GTH-844s, the [a]xles began to suffer catastrophic failures of both the front and rear axles." (*Id.* at ¶ 13). These failures "caused [Terex] to expend in excess of $75,000 responding to customers' issues with the [a]xles." (*Id.* at ¶ 14). On October 1, 2015, "Carraro ceased providing warranty coverage for its

[a]xles under warranty and advised its authorized service provider that [Terex] would be responsible for repairs from that date forward." (*Id.* at ¶ 15). "As a direct result of Carraro's improperly designed and/or manufactured [a]xles, and Carraro's refusal to honor its warranty, [Terex] was injured and suffered damages." (*Id.* at ¶ 16).

### b. Carraro's Counterclaim Complaint

Carraro presents a different version of events in its counterclaim complaint. Its account dovetails with Terex's description of the beginning of the parties' relationship, as it notes that it began providing axles[1] to Terex in December of 2012. (ECF No. 17 at ¶ 8). "In the spring of 2013, Terex reported to [Carraro] that it was receiving reports that the [axles] were breaking in the GTH 844 Telehandler." (*Id.* at ¶ 9). The parties met in the summer and fall of 2013 to discuss "the potential causes of the failure of the [axles]." (*Id.* at ¶¶ 10-11). "Throughout 2013, 2014, and 2015, Terex continuously represented to [Carraro] that [Carraro's axles] were at fault." (*Id.* at ¶ 12). Carraro disputed this contention and repeatedly inquired whether the problems could have been caused by "improper engagement of the differential lock mechanism, a matter solely within Terex's knowledge and control." (*Id.*). Terex repeatedly denied the existence of any issues with the differential lock mechanism. (*Id.*).

"Relying on Terex's assurances that there were no issues with [the differential lock mechanism], [Carraro] began redesign work of its [axles] in an effort to address the alleged failures of the [axles]." (*Id.* at ¶ 13). Carraro also began to "make new production investments based on its redesign of the [axles]," thereafter incurring "installation, production, and shipping costs in connection with the new design of" the [axles] for the GTH-844s. (*Id.* at ¶¶ 13-14).

---

[1] Carraro refers to the axles as "front and rear drive assemblies." (*See, e.g.*, ECF No. 17 at ¶¶ 7, 8). The distinction between the two parties' terms is irrelevant for the purposes of the parties' motions, however, and I thus refer to the parts produced by Carraro as axles throughout this ruling for the sake of consistency.

3

Carraro also "made warranty payments to Terex totaling $299,446 based on Terex's representations that the [axles] had failed and [that] there were no issues with the differential lock mechanism." (*Id.* at ¶ 15). "In January 2016, [Carraro] discovered that there was undue pressure that was causing the improper engagement of the differential locking mechanism in the GTH 844 Telehandlers, which in turn caused the failure of [Carraro's] [axles]." (*Id.* at ¶ 16). Terex "knew or should have known of this problem" and that it was the cause of the axle failures, and "continuously concealed" the true cause of the axle failures, all the while accepting new axles and warranty payments from Carraro. (*Id.* at ¶¶ 16-17).

## II. Legal Standard

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Revonate Mfg., LLC v. Acer Am. Corp.*, No. 12 Civ. 6017(KBF), 2013 WL 342922, at *2 (S.D.N.Y. 2013) (quoting *Netrix Leasing, LLC v. K.S. Telecom, Inc.*, No. 00 Civ. 3375(KMW), 2001 WL 228362, at *8 (S.D.N.Y. 2011)). For both pleadings, under Fed. R. Civ. P. 12(b)(6), the Court must determine whether plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ray v. Watnick*, 688 F. App'x 41 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted)). While the Court must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008), it must grant the moving party's motion if "a complaint is based solely on wholly conclusory allegations and provides no factual

support for such claims. . . ." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004).

Allegations of fraud "must be pled with particularity. . . ." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004). Under Fed. R. Civ. P. 9(b), a party must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Id.* (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)). The purpose of this heightened pleading standard is "to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improper charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (internal quotation marks omitted).

### III. Discussion

I will address the parties' motions to dismiss in turn.

#### a. Carraro's Motion to Dismiss

In its motion to dismiss, Carraro argues only that each of the counts in Terex's complaint fails to plausibly allege damages. (ECF No. 16-1 at 4). "Although a plaintiff must plead[] factual content that allows the court to draw the reasonable inference that he suffered damages as a result of the breach, [he] need not, at this stage, specify the measure of damages nor plead . . . [specific] proof of causation." *Errant Gene Therapeutics, LLC et al., Plaintiffs, v. Sloan-Kettering Inst. for Cancer Research, Defendant. Additional Party Names: Michael Buccellato, Rocco Girondi*, No. 15-CV-2044 (AJN), 2016 WL 205445, at *7 (S.D.N.Y. 2016) (internal

5

quotation marks and citations omitted)). That inquiry is properly left for "the summary judgment stage. . . ." *Id.*

Terex's complaint presents pithy but plausible allegations of damages based on Carraro's alleged conduct. In the complaint, Terex points to two specific actions on the part of Carraro as the cause of its damages for each count: (1) the failure of Carraro's axles (*see id.* at ¶¶ 16 ("As a direct result of Carraro's improperly designed and/or manufactured [a]xles, . . . [Terex] was injured and suffered damages."), 39 (arguing the same with respect to breach of implied warranty of fitness for particular purpose claim), 44 (same with respect to breach of implied warranty of merchantability claim), 50 (same with respect to negligence claim)); and (2) Carraro's refusal to honor its warranty for its axles (*see* ECF No. 1 at ¶¶ 16 ("As a direct result of . . . Carraro's refusal to honor its warranty, [Terex] was injured and suffered damages."), 22 (averring the same with reference to breach of contract claim), 28 (same with respect to breach of the implied covenant of good faith and fair dealing claim), 32 (same with respect to breach of express warranty claim)). Terex also points to the specific mechanism by which it suffered out of pocket harm: "The [a]xle failures caused Terex . . . to expend in excess of $75,000 responding to customers' issues with the [a]xles, "and "[o]n October 1, 2015, Carraro ceased providing warranty coverage . . . and advised its authorized service provider that Terex . . . would be responsible for repairs from that date forward." (ECF No. 1 at ¶¶ 14-15).

These allegations provide an adequate showing of damages because they establish "at least some indication of how [Carraro's conduct] resulted in damages." *See Comfort Inn Oceanside v. Hertz Corp.*, No. 11-CV-1534 JG JMA, 2011 WL 5238658, at *8 (E.D.N.Y. 2011) (concluding plaintiff adequately pled damages by alleging how defendant's conduct damaged it); *contrast Int'l Bus. Machines Corp. v. Dale*, No. 7:11-CV-951 VB, 2011 WL 4012399, at *2

6

(S.D.N.Y. 2011) (holding party failed to plead adequately claim for damages due to her failure to demonstrate how she was damaged by opposing party's conduct); *Kopperl v. Bain*, No. 3:09-CV-1754 CSH, 2010 WL 3490980, at *4 (D. Conn. 2010) (mere "formulaic repetition in each [claim] of the mantra that [plaintiffs] 'suffered damages' as the result of [opposing party's] conduct" did not satisfy pleading requirement).[2]

I therefore deny Carraro's motion to dismiss Terex's complaint.

### b. Terex's Motion to Dismiss

I now turn to Terex's motion to dismiss counts three, four, nine, and ten of Carraro's counterclaim complaint. (ECF No. 24).

### 1. Fraudulent Misrepresentation Claim (Count Three)

Terex contends that Carraro fails to allege its fraudulent misrepresentation claim with the particularity required by Rule 9(b), and I agree. (ECF No. 24-1 at 3). First, it fails to identify the speaker of any of the alleged misrepresentations. Instead, Carraro's complaint alleges only that Terex made the repeated misrepresentations in question. (*See* ECF No. 17 at ¶¶ 11-15). This is not enough to satisfy Rule 9(b). *See Santana v. Fed. Nat'l Mortg. Ass'n*, No. 1:15-CV-1424, 2016 WL 5955889, at *3 (N.D.N.Y. 2016) ("Courts in this circuit have been clear that allegations of fraud cannot rely on generalized claims that corporations or their agents made fraudulent statements."); *Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288, 291 (S.D.N.Y. 1996) (To "satisfy Rule 9(b)'s heightened pleading standard," a "complaint alleging fraud must . . . link the allegedly fraudulent statement to an individual speaker; attribution to a corporate entity or its

---

[2] It is also worth noting that, for breach of contract claims under Connecticut law, plaintiffs are entitled to nominal damages even without proof of harm. *See News America Marketing In–Store, Inc. v. Marquis*, 86 Conn. App. 527, 535 (2004) ("If a party has suffered no demonstrable harm . . . that party may be entitled . . . to nominal damages for breach of contract. . . .")

7

representative is insufficient."); *Wolff Office Equip. Corp. v. Wang Labs., Inc.*, No. 87 CIV. 1498 (SWK), 1987 WL 26844, at *3 (S.D.N.Y. 1987) (general allegation that corporate defendant made fraudulent misrepresentation to plaintiff did not satisfy Rule 9(b) in part because it did not identify speaker of misrepresentation).[3]

Carraro's fraud claim also fails to specify where and when the alleged fraudulent misrepresentations were made. It avers only that Terex made various representations that Carraro's axles were at fault for the failure of the GTH-844s "[t]hroughout 2013, 2014, and 2015." (ECF No. 17 at ¶ 12). These allegations say nothing as to place. Further, they offer only the most generalized description of when these misrepresentations were made, thereby failing to meet the requirements of Rule 9(b).[4] *See Tatum v. Oberg*, No. CIVA 308-CV-1251 JCH, 2009 WL 5066812, at *3 (D. Conn. 2009) (holding fraud claim did not satisfy strictures of Rule 9(b) in part because it averred that defendant "made fraudulent misrepresentations 'on several occasions in 2002 and 2003,' a two year span that is insufficiently broad"). In sum, Carraro's

---

[3] Carraro cites *Cornwall Bridge Pottery, Inc. v. Sheffield Pottery, Inc.*, No. 3:07CV1154 WWE, 2008 WL 906833 (D. Conn. 2008) and *Palumbo v. Nationwide Life Ins. Co.*, No. 3:16-CV-01143-WWE, 2017 WL 80405 (D. Conn. 2017) in favor of the proposition that "a business entity's representation to another business entity can satisfy Rule 9(b) particularity, especially where the entities are the only two parties in the transaction at issue and the content of the misrepresentation is easily identifiable." (ECF No. 27 at 5). Both of these cases, however, are distinguishable from the present situation. The *Cornwall* case concerned "representations concerning one transaction known to both parties." *Cornwall*, 2008 WL 906833 at *3. This case, by contrast, concerns an undefined number of transactions taking place over several years. *Palumbo* concerned alleged misrepresentations in insurance policies provided to the plaintiffs. *Palumbo*, 2017 WL 80405 at *1. Thus, like *Cornwall* and unlike this case, *Palumbo* concerned a defined series of transaction documented in writing and known to both parties.

[4] Carraro contends in its response that it specified the time and place where the misrepresentations took place as Redmond, Washington. (ECF No. 27 at 3). The counterclaim complaint, however, merely notes that the parties "held a meeting in Redmond, Washington to discuss the potential causes of the failure of the [axles] and potential corrective actions" on "July 18, 2013." (ECF No. 17 at ¶ 10). It does not allege that Terex made any misrepresentations at this meeting.

fraudulent misrepresentation claim is "conclusory and lacking in particulars"; it plainly does not meet the heightened pleading standard provided by Rule 9(b). *Olsen v. Pratt & Whitney Aircraft, Div. of United Techs. Corp.*, 136 F.3d 273, 275 (2d Cir. 1998) (affirming dismissal of fraud claim for failure to comply with Rule 9(b)).

I therefore grant Terex's motion to dismiss Carraro's fraudulent misrepresentation claim. Carraro will have **30** days from the issuance of this order to file an amended complaint setting out its fraudulent misrepresentation claim with the requisite particularity to satisfy Rule 9, to the extent it wishes to do so and is able to do so in accordance with the requirements of Rule 11.

### 2. Negligent Misrepresentation and Negligence Claims (Counts Four, Nine)

Terex contends that Carraro's tort claims must be dismissed under the economic loss doctrine.[5] (ECF No. 24-1 at 5). Under Connecticut law, the economic loss doctrine bars "tort claims that arise out of and are dependent on the contractual relationship between the parties." *Ulbrich v. Groth*, 310 Conn. 375, 404 (2013). Tort claims are "dependent" on a contractual claim if they "are premised on the same alleged conduct with respect to the same personal property and rely on the same evidence" and if the plaintiff can provide "no theory under which [it] could prevail on [its] negligence . . . claim[]" if the contract claim failed. *Id.* at 404-05.

Before I can determine whether Carraro's negligent misrepresentation and negligence claims are independent of its contract claims, I must first set out the parameters of the claims at issue. Carraro brings three claims that are apparently based on a contract: (1) a wrongful rejection claim based on Terex's rejection of the axles tendered by Carraro and simultaneous

---

[5] Terex includes Carraro's fraudulent misrepresentation claim in this argument. (*See* ECF No. 24-1 at 2). In light of my earlier disposition of this claim, however, I do not analyze it here.

concealment of "the fact that the cause of the failure of the [axles] was the improper engagement of the differential lock mechanism" (ECF No. 17 at ¶ 18); (2) a "breach of warranty by buyer" claim based on essentially the same conduct (*see id.* at ¶¶ 19-20); and (3) a breach of contract claim based on all of the prior conduct alleged in the complaint (*see id.* at Count Eight (incorporating all prior allegations set forth in the complaint)). Carraro's tort claims concern different but overlapping allegations. Its negligent misrepresentation claim is based on the following alleged conduct: (1) Terex's misrepresentations to Carraro that no issues existed with the differential lock mechanism and that these mechanisms were not the cause of the failure of the GTH-844s (*id.* at ¶ 26); and (2) Terex's misrepresentation that it was using "front [axle] kits to replace front [axles] that had failed, when in reality, Terex concealed that it had used 481 front [axle] kits to replace rear [axles] for which no warranty claim had even been submitted" (*id.* at ¶ 27). Carraro's negligence claim is based on Terex's purported breach of its duty to Carraro to "install front [axle] kits only as replacements for front [axles] and not install front [axle] kits as replacements for rear [axles]." (*Id.* at ¶ 45).

Carraro's allegations concerning the differential lock mechanisms clearly fall under the economic loss doctrine. As noted above, its wrongful rejection and breach of warranty claims both concern Terex's alleged failure to inform Carraro of the problems with the differential lock mechanism; its negligent misrepresentation claim concerns in part the same conduct. Since Carraro's contract and tort claims both rely upon the allegations concerning the differential lock mechanisms, they are not independent of one another. As such, the economic loss doctrine bars Carraro's negligent misrepresentation claim with respect to the allegations concerning the differential lock mechanisms.

The allegations concerning the improper installation of the front axle kits, however, present a more difficult question. The only one of Carraro's contract claims that appears to incorporate these allegations is the breach of contract claim. The nature of the breach of contract claim, however, is unclear. On the one hand, the breach of contract claim incorporates all prior allegations set forth in the complaint, including the allegations concerning the improper use of the front axle kits. Further, the breach of contract claim seeks the same damages as the tort claims concerning the front axle kits. (*Compare id.* at ¶¶ 30 (seeking $122,590 in damages for Terex's negligent misrepresentations for the improperly installed front axle kits), 47 (seeking same amount under negligence count) *with id.* at ¶ 44 (seeking $122,590 in damages for Terex's breach of contract)). Thus, it appears that the breach of contract claim covers the allegations concerning the front axle kits. On the other hand, Carraro's breach of contract claim does not mention the front axle kits. Indeed, it does not specify the nature of the contract at issue whatsoever, let alone identify the provision of the contract allegedly breached by Terex's improper use of front axle kits.

Thus, the reason for the lack of clarity concerning the overlap between Carraro's breach of contract and tort claims is that the former was not adequately pled. This is not the only one of Carraro's contract claims that suffers from this deficiency. Its second count purports to allege "breach of warranty by buyer" under Conn. Gen. Stat. § 42a-2-313. (ECF No. 17 at Count Two). That statute, however, pertains to "[e]xpress warranties *by the seller*" of goods. Conn. Gen. Stat. § 42a-2-313 (emphasis added). Further, Carraro does not identify what warranties Terex, the buyer, made to Carraro, let alone what warranties it breached. Hence, Carraro's breach of warranty claim appears to fail to state a claim as currently pled. "A district court has the inherent authority to dismiss an action that 'lacks an arguable basis either in law or in fact. . . .'"

*MacKinnon v. City of New York/Human Resources Admin.*, 580 Fed. Appx. 44, 45 (2d Cir. 2014) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). Since Carraro's breach of contract and breach of warranty claims appear to fall within this category, at least as currently pled, I exercise my inherent authority to dismiss these claims without prejudice. Further, since Carraro's breach of contract claim appears to be predicated in part on the allegations concerning the front axle kits, I conclude that the economic loss doctrine mandates the dismissal of Carraro's tort claims based upon this conduct.

I therefore grant Terex's motion to dismiss Carraro's negligent misrepresentation and negligence claims, and exercise my inherent authority to dismiss Carraro's breach of contract and breach of warranty claims. If it wishes to do so and to the extent it can do so in accordance with Rule 11, Carraro may, within **30 days** of the issuance of this order, file an amended complaint that adequately pleads its contract and warranty claims and/or sets out its tort claims in such a way as to demonstrate that they are sufficiently independent to avoid the application of the economic loss doctrine..

### 3. Violation of CUTPA (Count Ten)

Terex moves to dismiss Carraro's CUTPA claim on the basis that the conduct it alleges took place outside the State of Connecticut. (ECF No. 24-1 at 7). CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). "'Trade' and 'commerce' means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any service and any property . . . and any other article . . . in this state." Conn. Gen. Stat. § 42-110a(4). In *Western Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 322 Conn. 541 (2016), the Connecticut Supreme Court addressed the geographic scope of

CUTPA. *Western Dermatology Consultants* concerned which state's law should apply to a plaintiff's unfair trade practices claim predicated on conduct that took place in New Mexico and California. *Id.* at 544-46. The plaintiff had brought a CUTPA claim in Connecticut state court against the defendant, in part on the basis that the underlying contract governing the parties' relationship contained a choice of law provision noting that the agreement was governed by Connecticut law. *Id.* at 546. The *Western Dermatology Consultants* court concluded that "the law of New Mexico, rather than the law of Connecticut, govern[ed] the plaintiff's unfair trade practices claim." *Id.* at 556. The court concluded that the appropriate remedy was to enter judgment on the plaintiff's CUTPA claim in favor of the defendant "without prejudice to the plaintiff's commencement of a new action under New Mexico law." *Id.* at 588.

Here, Carraro concedes that conduct alleged in its CUTPA claim took place outside of the State of Connecticut. (ECF No. 27 at 1).[6] As a result, the claim is dismissed without prejudice. Carraro may replead its CUTPA counterclaim to allege specific conduct that occurred in Connecticut or to state a claim under the appropriate CUTPA analogue of the state(s) where the conduct at issue occurred. *See Western Dermatology Consultants*, 322 Conn. at 565-66 ("If the trial court had been asked to and did decide the choice of law issue correctly and at the appropriate time, the plaintiff could have repleaded its CUTPA claim under New Mexico law."); *Alexander Hamilton Life Ins. Co. of Am. v. James River Corp. of Virginia*, No. 3:96CV1100

---

[6] Carraro filed a notice of voluntary dismissal without prejudice with respect to its CUTPA claim in light of this fact. (ECF No. 27 at 1; ECF No. 28). This action, however, was not procedurally proper. Terex filed an answer to Carraro's counterclaim at the same time it filed its motion to dismiss. (*See* ECF No. 25). As such, Carraro may not unilaterally dismiss its CUTPA claim. *See* Fed. R. Civ. P. 41(c) ("A claimant's voluntary dismissal under Rule 41(A)(1)(A)(i) must be made . . . (1) before a responsive pleading is served. . . ."). Instead, Carraro should have filed a request to dismiss its CUTPA claim. *See id.* ("Except as provided in Rule 41(A)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."). Given my disposition on this claim, however, Carraro's procedural mistake is moot.

13

AHN, 1997 WL 13053, at *7 (D. Conn. 1997) (dismissing CUTPA claim on choice of law grounds but granting leave "to amend the Complaint to restate [CUTPA claim] to allege the specific conduct that occurred in Connecticut or to state a claim under the [CUTPA analogue of the state where the conduct at issue occurred].").

## IV. Conclusion

For the reasons set forth above, Carraro's motion to dismiss (ECF No. 16) is hereby DENIED and Terex's motion to dismiss (ECF No. 24) is hereby GRANTED. As set forth above, Carraro's second, fourth, eighth, ninth, and tenth counts are dismissed without prejudice. Carraro may file an amended counterclaim complaint repleading the dismissed claims within **30 days** of the issuance of this order. Carraro may not make further amendments to the counterclaim complaint absent a showing of good cause.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:    Hartford, Connecticut
           March 8, 2018